**UNITED STATES of America ex rel. Charles WESTBROOK, Petitioner-Appellee,**

v.

**Ross V. RANDOLPH, Warden of the Illinois State Penitentiary, Menard, Illinois, Respondent-Appellant.**

**No. 12109.**

United States Court of Appeals Seventh Circuit.

July 8, 1958.

Rehearing Denied Aug. 18, 1958.

Latham Castle, Atty. Gen., William C. Wines, Raymond S. Sarnow, A. Zola Groves, Asst. Attys. Gen., of counsel, for appellant.

Thomas P. Sullivan, Chicago, Ill., Jerold S. Solovy, Chicago, Ill., for appellee Charles Westbrook.

Before FINNEGAN, SCHNACKENBERG and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Respondent, Ross V. Randolph, Warden of the Illinois State Penitentiary, Menard, Illinois, appeals from an order of the district court discharging relator, Charles Westbrook, from custody on his petition for writ of habeas corpus.

The underlying facts as they appear from the pleadings and record and as found by the district court are not in dispute. Westbrook (petitioner-appellee) was convicted of armed robbery on April 22, 1948 by a jury in the Circuit Court of Christian County, Illinois, and sentenced for an indeterminate period with life as the minimum and the maxi-

mum duration of imprisonment. He was represented in that trial by two court appointed attorneys, and filed a timely notice of appeal, asking for and receiving several extensions of time aggregating about eight months in which to file his bill of exceptions. He sought to obtain, and offered to pay for, a stenographic transcript of the testimony and trial proceedings from the official court reporter, Robert E. Halligan. Halligan had become seriously ill shortly after the trial and was unable to prepare the transcript as requested. Following this illness the shorthand notes of Westbrook's trial were lost or destroyed and petitioner's repeated efforts to obtain the transcript for his use in filing a bill of exceptions failed. On June 27, 1949, the United States Supreme Court denied his petition for a writ of certiorari. Westbrook v. Ragen, 1949, 337 U.S. 960, 69 S.Ct. 1523, 93 L.Ed. 1759.

On December 11, 1950, an entry was made in the minutes of the Circuit Court of Christian County showing that on November 30, 1950 Westbrook filed his petition for a complete certified copy of the common law record and transcript of all evidence and proceedings without cost to himself, and that, on motion of the State's Attorney, the petition was denied.

Appearing *pro se*, Westbrook prosecuted a writ of error to the Illinois Supreme Court in 1951, and on January 21, 1952 that court held the sentence imposed by the trial court to be improper and remanded the cause for imposition of a proper sentence. People v. Westbrook, 1952, 411 Ill. 301, 103 N.E.2d 494, 29 A.L.R.2d 1341. On remand to the Circuit Court of Christian County, Stuart J. Traynor was appointed by the court to represent Westbrook, and under date of March 18, 1952 the following entry appears on the court minutes: "Counsel for Petitioner requests this court for a complete certified copy of the common law record and all evidence of proceedings in this cause. This request having been previously made by this defendant on November 30, 1950, and on Motion of State's Attorney same be denied as being

passed upon by this Court heretofore on December 11, 1950. Motion is denied. Defendant excepts." Thereafter, on April 3, 1952, Westbrook was resentenced to 30–50 years imprisonment.

Under date of April 24, 1952, the court reporter Halligan made the following affidavit:

"Affiant states that he is an Official Court Reporter, and during the course of his employment as such, he took, in shorthand, the testimony at the trial of the above entitled cause in the Circuit Court of Christian County, General No. 762, at Taylorville, Illinois, on April 21–22, 1948; and that said notes were not transcribed from shorthand.

"Affiant further states that shortly after this trial, the affiant became ill, and has been incapacitated continuously since that date, to and including the present; and that, as a result of such incapacity, the affiant has been unable to follow his profession as an Official Court Reporter.

"Affiant further states that in the confusion of his business affairs as the result of his illness, the shorthand notes above referred to have been misplaced or lost; and that at this date affiant is unable to locate them, and he has no knowledge as to whether they are even in existence, but well and truly believes that said record is lost or destroyed."

Westbrook's counsel, Traynor, made an affidavit to the effect that during 1952 he filed a motion for a new trial on behalf of Westbrook, setting out that the court reporter's notes of the 1948 trial were lost and claiming a consequent denial of petitioner's constitutional rights, and that such motion was denied.

On April 17, 1953, Westbrook filed a petition in the Circuit Court of Christian County for a hearing under the Illinois Post Conviction Hearing Act (Ill.Rev. Stat.1953, Ch. 38, §§ 826–832), alleging a violation of his constitutional rights in that he was deprived of his right to a full and complete review of the trial court.

proceedings by the Supreme Court of Illinois "due to the fact that the court reporter's shorthand notes were either lost or destroyed", as set out in Halligan's affidavit. This petition was dismissed by that court as being insufficient in fact and in law. The Supreme Court of Illinois affirmed the action of the circuit court, and the United States Supreme Court denied certiorari without opinion on June 6, 1955. Westbrook v. People of State of Illinois, 1955, 349 U.S. 957, 75 S.Ct. 886, 99 L.Ed. 1280.

In 1956 Westbrook filed a petition for a writ of habeas corpus in the Circuit Court of Randolph County, Illinois, asserting the denial of his constitutional rights which assertion was based on Halligan's missing notes. This petition was dismissed on motion by the State and certiorari was denied by the United States Supreme Court in Westbrook v. Randolph, 1957, 352 U.S. 973, 77 S.Ct. 366, 1 L.Ed.2d 326. It is to be noted that Westbrook filed other unsuccessful habeas corpus proceedings, not set out in the record, in various courts of Illinois.

■ The district court in this instant proceeding properly found that Westbrook had exhausted his state remedies thereby giving that court jurisdiction to entertain a petition for a writ of habeas corpus under Title 28 U.S.C.A. § 2254. "The precise question" determined by the trial court was that "relator was denied due process of law under the provisions of the 14th Amendment because he was unable to obtain a transcript of record for use in perfecting his appeal from the conviction in the original trial." In so holding, the court relied on Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

The Griffin case, which is cited and relied on by both parties as well as the district court, involved defendants who were unable to perfect their appeal from conviction in Illinois state courts *because of their financial inability to pay for a transcript of proceedings had in the trial court.* The Supreme Court, with four Justices dissenting, held that the failure of the State of Illinois to furnish *an indigent person* with a transcript essential to perfect an appellate review was a violation of the due process and equal protection clause of the Fourteenth Amendment in view of the fact that Illinois law grants to every person convicted in a criminal trial a right to review by writ of error. In that case the stenographic notes were available, but, with Griffin having no means to pay for the transcript, Illinois refused to furnish it to him without cost. In this case Westbrook's indigency had nothing to do with his failure to obtain the transcript because it was not possible to furnish it to him under any circumstances. In fact, he offered to pay for the transcript in the *first instance.*

We have here the unusual situation in which Westbrook has been denied his right of full appeal due to no fault of his own (since he promptly attempted to perfect his appeal), and because of a condition not created by the state and which it is powerless to remedy. We are faced here with the question of whether Westbrook's inability to appeal from a conviction on grounds which only a transcript of the proceedings would reveal, entitles him *ipso facto,* as the district court ruled, to absolute freedom rather than a new trial or some other relief. Since the day of his conviction he has been in the courts repeatedly seeking a new trial, and his plea for discharge is based on the denial of this requested relief.

On motion of the Illinois Attorney General, the district court certified that probable cause for appeal existed in this case, 28 U.S.C.A. § 2243. However, despite the request of the attorney general that prisoner be not released pending this appeal, the district court ordered respondent, the warden of the penitentiary, to discharge him from custody and this was done. In so far as the record shows Westbrook is now at liberty.

■ We hold that under the facts in this case it was the duty of the district court not to disturb the custody of the

prisoner, but to remand him to the state court which tried him originally with instructions to vacate the judgment of conviction and to grant him a new trial. In reaching this conclusion we are not unmindful of the possibility that Westbrook may never be apprehended, or of the probability of his acquittal upon a second trial because of the absence of material witnesses or for other reasons. If the order of the district court were to stand, there must also be considered the possible effect of such a decision on many other prisoners who may see a fertile field for the use of habeas corpus where the death or incompetency of court reporters occurs or where their stenographic trial notes are lost or destroyed.

There is ample authority for the district court to dispose of this case in the manner suggested, instead of releasing the prisoner from custody in the first instance. It has been held that in habeas corpus the court has the power to enter an order of remandment. Chessman v. Teets, 1957, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253; Tod v. Waldman, 1924, 266 U.S. 113, 45 S.Ct. 85, 69 L.Ed. 195; Mahler v. Eby, 1924, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549.

The habeas corpus act, 28 U.S.C.A. § 2243, provides in part:

"The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

In Mahler v. Eby, supra, 264 U.S. at page 46, 44 S.Ct. at page 288, in an opinion by Mr. Chief Justice Taft, the Court said:

"Under this section, this court has often delayed the discharge of the petitioner for such reasonable time as may be necessary to have him taken before the court where the judgment was rendered, that defects which render discharge necessary may be corrected. In re Bonner, 151

U.S. 242, 261, 14 S.Ct. 323, 38 L.Ed. 149; Medley, Petitioner, 134 U.S. 160, 174, 10 S.Ct. 384, 33 L.Ed. 835; Coleman v. Tennessee, 97 U.S. 509, 24 L.Ed. 1118; United States v. McBratney, 104 U.S. 621, 624, 26 L.Ed. 869; Bryant v. United States, 8 Cir., 214 F. 51, 53. * * *

"Accordingly the judgment of the District Court is reversed with directions not to discharge the petitioners until the Secretary of Labor shall have reasonable time in which to correct and perfect his finding on the evidence produced at the original hearing, if he finds it adequate, *or to initiate another proceeding against them.*" (Our emphasis.)[1]

In Tod v. Waldman, supra, the Court held that, in a habeas corpus proceeding in which aliens, refused admission to the country and held for deportation, were denied their proper right of appeal to the Secretary of Labor they should not, therefore, be discharged from custody and their bail released, but that *the order should secure them their appeal and remand them to custody* of the immigration authorities pending decision by the Secretary. The court further ordered: "Failing the granting and hearing of the appeal within 30 days after the coming down of the mandate herein, the relators and their bail are to be discharged." Tod v. Waldman, supra, 266 U.S. at page 120, 45 S.Ct. at page 88.

Chessman v. Teets, supra, involved a question of reconstruction of the transcript from the notes of a deceased official court reporter by a substitute reporter, who had worked in close collaboration with the prosecutor. Defendant was not represented in person or by counsel when the trial record was settled, and it was used over his objection on his appeal, in which his conviction was affirmed. In an opinion of the Supreme Court by Mr. Justice Harlan, the court held that

---

1. The court was there referring to the language in § 761 of the Revised Statutes of 1878, which is in substance the same as the language in § 2243 of Title 28 U.S.C.A.

the *ex parte* settlement of the record violated petitioner's right to procedural due process under the Fourteenth Amendment. With reference to the relief to be granted, the court said in 354 U.S. at pages 165–166, 77 S.Ct. at page 1132:

"We have given careful consideration to the nature of the relief to be granted. *Petitioner's discharge is not to be ordered without affording California an opportunity to review his conviction upon a record the sufficiency of which has been litigated in proceedings satisfying the requirements of procedural due process.* \* \* \* The task of affording petitioner a further review of his conviction upon a properly settled record is necessarily one for the state courts. \* \* \* We conclude, therefore, that *our proper course is* \* \* \* *to remand the case to the District Court, with instructions to enter such orders as may be appropriate to allow California a reasonable time within which to take further proceedings* not inconsistent with this opinion, *failing which the petitioner shall be discharged.* Cf. Dowd v. United States ex rel. Cook, 340 U.S. 206, 209–210, 71 S.Ct. 262, 263–264, 95 L.Ed. 215." (Our emphasis.)

■ Respondent urges that the so-called Illinois "bystanders' bill of exceptions," or a bill of exceptions prepared from someone's memory in condensed or narrative form and certified to by the trial judge, was available to petitioner in his attempted appeal from his conviction. In view of the rather obscure nature of such a bystanders' bill in Illinois,[2] and the practical difficulty facing a prisoner in obtaining it,[3] we would not feel justified in holding that petitioner has failed to exhaust his state remedies in this respect.

For the reasons expressed, the order of the district court releasing petitioner from custody is reversed and this cause is ordered remanded to that court with instructions that it remand petitioner to the Circuit Court of Christian County, Illinois, with directions to the latter court to vacate the judgment of conviction and to grant petitioner, Charles Westbrook, a new trial; and that upon the failure of the Circuit Court of Christian County, Illinois, to vacate said judgment of conviction and to grant said new trial within six months after the date of the actual physical delivery of petitioner to the custody of said circuit court, the petitioner shall be finally discharged from custody. In order to accomplish the foregoing the district court should

2. Mr. Justice Black in a footnote to his opinion in the Griffin case pointed out that "In oral argument [in that case] counsel for Illinois stated: 'With respect to the so-called bystanders' bill of exceptions or the bill of exceptions prepared from someone's memory in condensed and narrative form and certified to by the trial judge—as to whether that's available in Illinois I can say that everybody out there understands that it is but nobody has heard of its ever being actually used in a criminal case in Illinois in recent years. I think if you went back before the days of court reporting you would find them but none today. And I will say that Illinois has not suggested in the brief that such a narrative transcript would necessarily or even generally be the equivalent of a verbatim transcript of all of the trial.' "

3. With respect to this, Justice Schaefer, in his opinion in People v. Joyce, 1953, 1 Ill.2d 225, 230, 115 N.E.2d 262, 264, observed: "Defendant also alleged that he had been unable to secure a transcript of the testimony upon his trial and would therefore have been unable to present on direct review his claim as to the coerced confession. The trial court ruled that defendant could nevertheless have presented his claims in a constructed or 'bystander's' bill of exceptions \* \* \* (citing) and therefore held that defendant's claim had been waived by his failure to present it upon a direct review. We think, however, that *in view of defendant's incarceration* and his uncontroverted allegation of indigence, this *alternative method of bringing up the record* for review was *not*, as a practical matter, *available to him.* We hold that the defendant did not waive the claim." (Our emphasis.)

take such proper steps as will cause the arrest of petitioner and his return to the custody of the Warden of the Illinois State Penitentiary, Menard, Illinois, where he shall remain until the district court orders said Warden to deliver him to the custody of the Sheriff of Christian County, Illinois, for a new trial as herein set forth.

SCHNACKENBERG, Circuit Judge (concurring).

I concur in Judge HASTINGS' opinion reversing the order of the district court and remanding this case to that court with instructions. I also concur in the reasons expressed by Judge HASTINGS for said reversal and remandment.

I do not agree with his views in regard to the availability to petitioner of a bystander's bill of exceptions.

It is well to point out that the court in Griffin v. People of State of Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891, said that bystanders' bills of exceptions or other methods of reporting trial proceedings could be used in some cases. In the case before us, the prisoner was of course present during his trial in the state court. His numerous and voluminous court petitions and documents, prepared by him personally for use in the many court proceedings which he has instituted since being incarcerated following his conviction, impress one with his alert mental attainments and his familiarity with court procedure. Lacking a stenographic transcript of the proceedings at his own trial, he has been at all times in a peculiarly advantageous position to prepare a bystander's bill of exceptions for use in an appeal from his conviction. There is not the slightest evidence that he made any effort to prepare and obtain certification of a narrative of the substance of the proceedings against him at his trial. What the result of such effort would be cannot be predicted. If he had presented such a bill of exceptions to the trial judge it could have been considered, together with objections, if any thereto, by the state, and settled by the trial judge. He has

not exhausted his state remedies in this respect nor has he excused his failure to make such an effort.

The facts stated in the foregoing paragraph would justify a reversal of the district court's order with a direction to that court to enter an order dismissing the petition for habeas corpus. However, I am agreeable to the disposition of this appeal in the manner stated by Judge HASTINGS.

FINNEGAN, Circuit Judge (dissenting).

We are faced with fundamental doctrine rather than a fleeting occasion for shabby haggling and bargaining with Illinois over the liberty of an obscure citizen. "Whoever will attentively consider the English history may observe that the flagrant abuse of any power by the crown or its ministers has always been productive of a struggle which either discovers the exercise of that power to be contrary to law, or (if legal) restrains it for the future. This was the case in the present instance. The oppression of an obscure individual gave birth to the famous *habeas corpus act*, 31 Car. II. c. 2, which is frequently considered as another *magna carta* of the kingdom; and by consequence and analogy has also in subsequent times reduced the general method of proceedings on these writs \* \* \* to the true standard of law and liberty." 3 Blackstone, Commentaries 135 (1768).

I disapprove the artificial theory running rampant through the opinions written by Judge SCHNACKENBERG and Judge HASTINGS and for that reason, among others I will now state, dissent from my brothers. Until today I thought it fairly well settled by a host of respectable precedent that the sole function of a petition for a writ of *habeas corpus* was testing legality of challenged detention. Yet, unhappily, the majority have contrived a use for such proceedings which I think both dubious, dangerous and novel. The chimerical relief grudgingly given this "bad man" who, inconveniently to be sure has tenaciously clung to what he dared think was a constitu-

tional right, may become known as the rule of conditional release from illegal detention or perhaps more appropriate, quasi-enjoyment of semi-rights under the Fourteenth Amendment. Westbrook was discharged, not enlarged on bail. Nothing said by the majority actually supports their views that the district judge committed reversible error by releasing this state prisoner. Quite the contrary, for my brothers find illegal custody but are, apparently uncomfortable with the conclusion following from that premise. With a merciless disregard of the consequences the majority have mandated the apprehension of a man who had been released by valid order of the district court. In my sights this district judge disposed "of the matter as law and justice require." 28 U.S.C. § 2243. I eschew any notion that we can, now, use § 2243 as a vehicle for another, perhaps more attractive and expedient, solution for the one reached by the district judge. My colleagues have met the issues raised on appeal and for my part the matter ends there. I know of no legalistic reason why this appeal must culminate in a draw between the parties to it.

I refuse to dilute the Great Writ in fear and trembling of my colleagues' prophecy that: "If the order of the district court were to stand there must also be considered the possible effect of such a decision on many other prisoners who may see a fertile field for the use of *habeas corpus* where the *death or incompetency* of court reporters occurs or where their stenographic trial notes are *lost* or *destroyed.*" If this case hinges on such predictions the least that can be done is to consult actuarial tables and Lloyd's of London. In any event "the shaping of future law is primarily the business of legislatures." Mr. Justice Frankfurter, Of Law and Men, 174 (Elman ed. 1956).

Mahler v. Eby, 1924, 264 U.S. 32, 44 S.Ct. 283, 288, 68 L.Ed. 549, and Tod v. Waldman, 1924, 266 U.S. 113, 45 S.Ct. 85, 69 L.Ed. 195, relied on by the majority, are a brace of immigration case opinions written by Chief Justice Taft, in the same year. In Mahler the Secretary of Labor issued statutory warrants for the arrest of the appellants and the Court said: "The warrant lacks the finding required by the statute and such a fundamental defect we should notice. It goes to the existence of the power on which the proceeding rests. It is suggested that, if the objection had been made earlier, it might have been quickly remedied. There was no chance for objection afforded the petitioners until, after the warrant issued, in the petition for *habeas corpus*. The defect may still be remedied on the objection made in this court." The defect which rendered the discharge of Westbrook necessary is unlike the missing jurisdictional fact statement in Mahler. The Tod case is another instance where the Secretary of Labor was required to make certain "definite findings on the issues made by the petition." Both Mahler and Tod involve federal administrative officials—the Supreme Court was not reaching down into a State trial court ordering vacation of judgment entered 10 years earlier.

The directions laid down in Chessman v. Teets, 1957, 354 U.S. 156, 166, 77 S.Ct. 1127, 1 L.Ed.2d 1253, and on which Judge HASTINGS places great reliance, are all confined to the federal system— the Court of Appeals and the U. S. District Court. Chessman is barren of any authority for this unique disposition of Westbrook. I have grave doubts that a U. S. District Court can order the Circuit Court of Christian County to vacate this judgment of conviction. We have no business treating with that judgment of conviction as though this was an appeal on the merits—that is the function of the Supreme Court of Illinois. All we can say is that Westbrook's detention is illegal under the Fourteenth Amendment. The ultimate disposition is where I part company with my brothers and recalls to mind a few lines by Mr. Justice Holmes: "I once heard a very eminent judge say that he never let a decision go until he was absolutely sure that it was right. So judicial dissent often is

blamed, as if it meant simply that one side or the other were not doing their sums right, and, if they would take more trouble, agreement inevitably would come." Holmes, 10 Harv.L.Rev. 456, 461 (1896).

This current divergence from my colleagues' facile solution is based on a tempered antipathy to paying constitutional rights mere lip service. I would honor the observance based upon the breach. The futile elaboration of the directions prescribed today amount to saying that if Westbrook, somehow, is given a new trial within the period of grace then the U. S. District Judge was wrong in releasing Westbrook, but if the culprit is not so tried then the federal Judge was right. It seems to me that Illinois had innumerable opportunities for a new trial during the decennary of litigation, and certainly in the district court below.

That our Nation is bound together by a common humanity is, I think, a thesis implicit in the Due Process and Equal Protection clauses contained in the Fourteenth Amendment.[1] The Constitution articulates human aspirations for a society of free men, of which we ourselves are part, and the Amendment is an element of the integrating structure of the organic law. Freedom continues as an efficient form of social organization only as long as members of our free society continuously vitalize its institutions through "A frequent recurrence to the fundamental principles of civil government [which] is absolutely necessary to preserve the blessings of liberty." Ill. Const. Art. II, § 20 (1870). Consonant with, and typical of, such fundamentals, "fair play" in the administration of criminal justice has been given increasing

impetus and emphasis in Supreme Court opinions concerning the Fourteenth Amendment. Our own commitments to support and uphold that Amendment compels the step from avowal to actuality by affirming the judgment, on the facts established in the record now before us and brought here for review by the State of Illinois.[2] Though federal judges are without supervisory powers over the administration of criminal law in state courts, they are mandated to grant persons redress when states contravene the quoted clauses of the Amendment. And keen awareness of the proper deference owing to sovereign State action, in criminal cases especially, need not inhibit federal judges from granting state prisoners the drastic relief of release from a state penitentiary when the Amendment's clauses have been violated. Such deference is a tempering, not a determining element.

However, that "element" was only one variable in the legal equation formulated for solving the problem presented below on the pleadings and by the proceedings had on Westbrook's petition for a writ of *habeas corpus*. Illinois, in this appeal, would overturn the final judgment order discharging Westbrook from custody of the Warden of the Illinois State Penitentiary. Underlying the challenged judgment is the district judge's memorandum containing findings of fact, all of which critical ones are virtually uncontested on the Warden's behalf. Rule 52, Federal Rules Civil Procedure, 28 U.S.C. The State, as appellant, simply[3] insists upon a different interpretation of the Fourteenth Amendment than that reached by the district court on the undisputed operative facts.

1. "Section 1 * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. Amend. XIV.

2. The district judge certified that there exists probable cause for appeal by the respondent Warden. 28 U.S.C. § 2253.

3. Petitioner's police record made part of this record on appeal by the Warden, is wholly irrelevant and gratuitous. It has no bearing on Westbrook's constitutional rights.

After Westbrook, petitioner-appellee in our court, was convicted,[4] April 22, 1948 of armed robbery, by a petit jury in Christian County, Illinois, he filed a timely notice of appeal and then attempted to pay for and purchase a stenographic transcript of the testimony and proceedings from Robert Halligan, the official court reporter who took shorthand notes during that trial. From an affidavit[5] in this record it is clearly established that Halligan suffered a physical breakdown in May, 1948 "and has not worked since that date; that his condition has been diagnosed as multiple sclerosis." In any event, Halligan himself wrote to Westbrook, on August 26, 1948:

"I have your letter of August 22nd concerning the record in your case. I am still confined to my home and expect to be here at least another month. I am unable to do any work.

"I notice what you say about having my doctor file an affidavit. At the present time he is on vacation but if you wish to write to him his name is Dr Vito Vighi, Central Life Building, Ottawa, Illinois.

"The cost of the transcript will be approximately $106.50, but I know it will be at least two months before I am able to do it for you."

Aware[6] he needed the transcript, Westbrook asked for and received several

---

4. When the 1948 verdict was entered, court-appointed counsel representing Westbrook orally moved to set aside the verdict, arrest judgment, and grant a new trial. All of these were denied. Except for a short time shortly after his 1948 trial Westbrook has been continuously indigent, filing pauper's affidavits in 1950, 1952, 1953 and 1957, and has been represented by various court-appointed counsel.

5. Robb J. Purcell, an attorney who also stated in his affidavit:

"Affiant states that he is also closely acquainted with the family of Robert E. Halligan and knows that his wife, a school teacher in Ottawa, has made a careful search on repeated occasions to locate any shorthand notes or transcripts of the record which Halligan, as official court reporter, took in the matter of the People v. Charles Westbrook, Circuit Court, Christian County, Number 762; that although the affiant is unable to recall the exact dates, the affiant recalls several occasions upon which he was consulted by said Robert E. Halligan and by his wife with regard to said shorthand notes and personal requests for a transcript thereof, which requests were made by Charles Westbrook, Box 711, Number 2445, Menard, Illinois; affiant recalls that some of the requests made by Westbrook were made during the months immediately following Halligan's illness in 1948; and that the affiant well and truly remembers the distress which Halligan suffered as the result of his inability to locate said notes.

"Affiant repeats that many careful and exhaustive searches of Halligan's personal effects have been made by his wife and his family and that they are now able to state affirmatively that to the knowledge of Halligan, his wife and children, said notes are not in their possession, nor do they know where said notes may be.

"Affiant makes this affidavit to advise all whom it may concern that Charles Westbrook has made repeated efforts to obtain the transcript made from said notes and that it has been impossible for said Halligan to find said notes or make such transcript; and, further, the affiant makes this affidavit freely, and without any knowledge of the facts of said matters, then or now in litigation, and that he does not know said Charles Westbrook or have any personal or professional relationship to or with him; and that this affidavit is made only for the purpose of explaining Robert E. Halligan's inability, and to verify the fact that Charles Westbrook has made repeated requests for such notes."

6. During the proceedings in the United States District Court, on his petition for a writ of *habeas corpus*, Westbrook testified April 17, 1957 under cross-examination by an Assistant Attorney General of the State of Illinois as follows:

"Q. You were the defendant in the case of the People versus Charles Westbrook? A. Yes, sir and I made numerous attempts and had correspondence with the official court reporter and each and every time I was advised he was unable to make the transcript. I got a 60 day extension of time and another 60 days and it went up to eight months. At last time it was denied even though the court knew I had no record and the court reporter was unable to work and

extensions of time to file his bill of exceptions and during the period June, 1948 to March, 1949 he was granted roughly eight months of additional time. On June 27, 1949, the United States Supreme Court denied his petition for a writ of certiorari in No. 684, Misc., Westbrook v. Ragen, 1949, 337 U.S. 960, 69 S.Ct. 1523, 93 L.Ed. 1759. Chronologically I next notice an entry in the certified copy of the Christian County Circuit Court minutes, in this record: "December 11, 1950. Motion of defendant for complete certified copy of common law record and transcript of all evidence and proceedings without costs to petitioner, petition filed November 30, 1950. Petition considered and upon motion of the State's Attorney the prayer thereof is denied and the Clerk is ordered to advise petitioner of this order."

When judgment was entered on the verdict in 1948, the state trial judge sentenced Westbrook, who was then 51 years of age, for a term of years not less than nor more than life or, the court fixed both the minimum and maximum duration of imprisonment at life. Appearing *pro se,* Westbrook, during 1951, prosecuted a writ of error to the Illinois Supreme Court, which speaking through Mr. Justice Schaefer, concluded: " * * [W]e are of the opinion that the imposition of a sentence for armed robbery with both minimum and maximum terms fixed at life imprisonment is invalid. The judgment of the circuit court of Christian County is reversed and the cause remanded, with directions to enter an indeterminate sentence in accordance with the views expressed in this opinion." People v. Westbrook, 1952, 411 Ill. 301, 304, 103 N.E.2d 494, 495.

On remand to the Circuit Court of Christian County, attorney Traynor was appointed to represent Westbrook, and from the certified minutes under date of March 18, 1952, this entry appears: "Counsel for Petitioner requests this court for a complete certified copy of the common law record and all evidence of proceedings in this cause. This request having been previously made by this defendant on November 30, 1950, and on Motion of State's Attorney same be denied as being passed upon by this Court heretofore on December 11, 1950. Motion is denied. Defendant excepts." Westbrook was re-sentenced to 30–50 years imprisonment, on April 3, 1952.

About this juncture in these events Halligan made the following affidavit dated April 24, 1952:

"Affiant states that he is an Official Court Reporter, and during the course of his employment as such, he took, in shorthand, the testimony at the trial of the above entitled cause in the Circuit Court of Christian County, General No. 762, at Taylorville, Illinois, on April 21–22, 1948; and that said notes were not transcribed from shorthand.

"Affiant further states that shortly after this trial the affiant became ill, and has been incapacitated continuously since that date, to and including the present; and that, as a result of such incapacity, the affiant has been unable to follow his profession as an Official Court Reporter.

"Affiant further states that in the confusion of his business affairs as the result of his illness, the shorthand notes above referred to have been misplaced or lost; and that at this date affiant is unable to locate

---

I made at least five attempts to get the record prior to the time the eight months ran out.

"The Court: Eight months after your trial? A. From the time the extension of time had run out, I told the court reporter each time when you can make the record, advise me and the check will be there.

"The Court: Anything else? A. I made every effort to get this record, your Honor and the court reporter replied to me that he has been unable to make the trial transcript and it has left me for these nine years without an appeal and with the good time I had left out I have served approximately 16 years sentence."

them, and he has no knowledge as to whether they are even in existence, but well and truly believes that said record is lost or destroyed."

From Traynor's affidavit in this record it appears that he, as court appointed counsel for Westbrook during 1952, had filed a motion for a new trial and informed the court that the court reporter's notes of the 1948 trial were lost, urging denial of constitutional rights. All of which was unavailing.

Subsequently Westbrook proceeded under the Illinois Post Conviction Hearing Act (Ill.Rev.Stat.1953, c. 38 Par. 826–832) in the Circuit Court of Christian County, and among other points, relied on the Halligan affidavit quoted above. This petition was dismissed on motion made by the State. A terse order entered by the Illinois Supreme Court,[7] approved the denial of post-conviction relief, and the United States Supreme Court denied certiorari without opinion. Westbrook v. Illinois, 1955, 349 U.S. 957, 75 S.Ct. 886, 99 L.Ed. 1280. Later, 1956, Westbrook filed a petition for a writ of *habeas corpus* in the Circuit Court of Randolph County, Illinois, based on constitutional issues connected with the missing stenographic notes. A motion by the State resulted in dismissal of the proceedings on July 13, 1956, culminating in denial of certiorari by the

United States Supreme Court. Westbrook v. Randolph, 1957, 352 U.S. 973, 77 S.Ct. 366, 1 L.Ed.2d 326. Apparently there were other futile *habeas corpus* proceedings. Westbrook has exhausted his state court remedies and the district judge's finding on that aspect of the case is not only correct but probably an understatement. I will discuss the tenuous claim made for the Warden that Westbrook made no effort to procure a bystanders' bill of exceptions.

There are several vital inescapable facts which obstinately refuse to evaporate in the face of respondent's semantic jugglery. Halligan was seriously ill in 1948 and unable to transcribe his shorthand notes; his incapacity continues. The notes were "misplaced," "lost" or "destroyed." Westbrook exhausted his remedies, repeatedly and timely, urged the point in issue. This petitioner has never received a review by Illinois Courts on the record of proceedings at his trial. Indeed the brief filed for the Warden concedes, in substance, that Westbrook's conviction "can not be reviewed in the ordinary fashion because the illness of the court reporter has prevented transcription of the evidence."

Both sides find comfort in Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 588, 100 L.Ed. 891, even in the absence of a majority opinion. Mr.

7. What follows is an excerpt from this order and should be read against the background of Halligan's affidavit, then in the record, regarding the loss of the shorthand notes:

"In our opinion, the allegations of the petition with reference to the hearing in mitigation and aggravation are insufficient to raise a constitutional question under the Post Conviction hearing act, in so far as the allegations with respect to the original trial are concerned, the only allegations which raise such questions are the allegations that state and State knowingly used perjured testimony and that petitioner's Counsel was incompetent. Petitioner was brought before the Court for a hearing on the State's motion to dismiss his petition and in the course of that hearing he stated that his allegations with respect to perjured testimony at the original trial was based upon the testimony of a witness who testified under oath that he had never talked to the State's Attorney or the Sheriff about the case nor had he been before the Grand Jury, whereas he had talked to these officials and had also testified before the Grand Jury. Even if petitioner were able to prove this allegation, it would not establish that the Prosecuting Attorney had any reason to anticipate that the witnesses in question would testify falsely. The allegation with respect to incompetency of counsel was made in general terms and was insufficient to require a hearing. That the charge that he was denied witnesses at his original trial also presents no constitutional question in the absence of an affirmative that the testimony of these witnesses would have been material to his defense."

Justice Black announced the judgment of the Court "and an opinion in which The Chief Justice, Mr. Justice Douglas, and Mr. Justice Clark join." Concurring in the judgment, Mr. Justice Frankfurter wrote a separate opinion expressing his views. There is a dissent by Justices Burton and Minton with whom Justices Reed and Harlan joined. Mr. Justice Harlan also wrote a separate dissenting opinion adding further grounds for his position. Reliance on some glittering generalities taken from that collection of opinions is an unsound approach to the case now under review. A majority did join in vacating the judgment of the Supreme Court of Illinois and remanding the cause to that court for further action not inconsistent with the paragraph expressly designated in the opinion of Mr. Justice Black. 351 U.S. 12, 20, 76 S.Ct. 585, 591. Regardless of the multiple views reported in Griffin, it is clear that the stenographic notes were available and only the impoverished condition of Griffin barred him from obtaining the stenographic transcript of proceedings needed to prosecute an appeal to the Illinois Supreme Court. Illinois refused to furnish the stenographic transcript without cost to the defendant Griffin.

People v. Griffin, 1956, 9 Ill.2d 164, 166, 168, 137 N.E.2d 485, 486, contains some significant views expressed by the Illinois Supreme Court when the Griffin mandate reached the State level on remand. "The impact of the decision (Griffin) * * *". Mr. Justice Schaefer wrote on behalf of the Illinois Supreme Court, "is not, of course, confined to these petitioners. The net of that court's holding is that since Illinois provides a full review of all errors alleged to have occurred in the course of a criminal trial at the instance of a defendant who brings before the reviewing court a transcript of the proceedings at the trial, Illinois violates the equal protection clause of the fourteenth amendment (and perhaps the due-process clause as well) when it denies such a review to one who cannot afford to pay the court reporter for writing up the transcript. The scope of the decision is thus not limited to the case of the petitioners * * * [W]e have amended our Rule 65–1 to provide for the furnishing of transcripts, *if they can be procured,* to indigent prisoners at the expense of the State. In the case of prisoners sentenced *prior to April 23, 1956,* the provisions of Rule 65 with respect to the time within which reports of proceedings at the trial are required to be presented are made inapplicable, and when the transcript has been furnished the cases will be reviewed upon petition for a writ of error. The procedure will be as provided for the review of judgments in post-conviction cases." (Emphasis added.) Neither that opinion, nor Rule 65–1 mentions a bystanders' bill of exceptions.

Indeed in late 1953, Mr. Justice Schaefer, when delivering the opinion reported as People v. Joyce, 1953, 1 Ill.2d 225, 230, 115 N.E.2d 262, 264, observed:

"Defendant also alleged that he had been unable to secure a transcript of the testimony upon his trial and would therefore have been unable to present on direct review his claim as to the coerced confession. The trial court ruled that defendant could nevertheless have presented his claims in a constructed or 'bystander's' bill of exceptions, * * * (citing) and therefore held that defendant's claim had been waived by his failure to present it upon a direct review. We think, however, that *in view of defendant's incarceration* and his uncontroverted allegation of indigence, this *alternative method of bringing up the record* for review was *not,* as a *practical matter, available to him.* We hold that the defendant did not waive the claim." (Italics supplied.)

There are numerous and obvious problems attendant in such situations, for example, under the majority view in Chessman v. Teets, 1957, 354 U.S. 156,

162, 77 S.Ct. 1127, 1130, 1 L.Ed.2d 1253 "the *ex parte* settlement of [the] state court record violated petitioner's constitutional right to procedural due process * * * the petitioner was entitled to be represented throughout those proceedings either in person or by counsel."

8. In relevant part of the post Griffin provisions of Ill.Supreme Court Rule 65–1 provides:

"(2) Any imprisoned person, sentenced prior to April 23, 1956, may file, on or before March 1, 1957, in the court in which he was convicted, a petition requesting that he be furnished with a stenographic transcript of the proceedings at his trial. The petition shall be verified by the petitioner and shall state:

"(a) the date of his conviction and the charge upon which he was convicted;

"(b) facts showing that he was at the time of his conviction and is at the time of filing the petition without financial means to pay for the cost of a stenographic transcript of the proceedings at his trial;

"(c) the alleged errors which petitioner claims occurred at his trial; and

"(d) that he desires to apply for issuance of a writ of error to review the conviction.

"Notice of the filing of the petition and a copy of the petition shall be served upon the State's Attorney at the time the petition is filed. The State's Attorney may answer the petition within 20 days after service of the petition on him and shall transmit a copy of his answer, if any, to the petitioner. If upon consideration of the petition and answer, the court finds:

"(a) that the petitioner was at the time of his conviction and is at the time of filing the petition without financial means to pay for the cost of a stenographic transcript of the proceedings at his trial, and

"(b) that a stenographic transcript of the proceedings at his trial, (or an appropriate portion thereof), is necessary to present fully the errors recited in the petition,

the court shall direct the court reporter to transcribe an original and copy of his notes, in whole or in part, as is appropriate to present fully the errors set forth in the petition, without charge to the defendant. If satisfied as to the accuracy of the transcript, the court shall, irrespective of the provisions of Rule 65 fixing the time for the presentation, certification and filing of reports of proceedings at trials, certify to its correctness.

Illinois Supreme Court Rule 65–1, S. H.A. ch. 110, § 101.65–1, adopted June 19, 1956, effective September 26, 1956, and following in the wake of Griffin, is unmentioned in Westbrook's petition for a writ of habeas corpus filed below on March 25, 1957. This Rule[8] supplies the

The original of the certified transcript shall be filed with the clerk and the copy transmitted to the petitioner. In the event the court finds that it is impossible to furnish petitioner a stenographic transcript of the proceedings at his trial because of the unavailability of the court reporter who reported the proceedings and the inability of any other court reporter to transcribe the notes of the court reporter who served at the trial, or for any other reason, the court shall deny the petition.

"Thereafter, the petitioner may file in this court or in the Appellate Court, which ever is appropriate, an application for a writ of error to review his conviction. The application shall be verified by petitioner and entitled 'Petition For Writ of Error Under Rule 65–1.' It shall state (1) the crime charged against petitioner, the verdict, if any, of the jury, the judgment and sentence; and (2) a concise statement of all errors, whether or not stated in the petition for the transcript of the trial proceedings, which petitioner claims occurred at his trial. Copies of the application shall be served as provided for service of petitions under Rule 27, and proof of service shall be filed. The copy served upon the clerk of the trial court shall be accompanied by a *praecipe* designating the portions of the record of the trial court petitioner desires to have incorporated in the record to be reviewed. The clerk of the trial court shall, within 30 days after receipt of the application and *praecipe* and without cost to petitioner, prepare, certify and forward to the clerk of this court or of the Appellate Court, whichever is appropriate, a copy of the record as requested in the *praecipe*, always including, however, the indictment, information or complaint, the arraignment, plea, and the stenographic proceedings, if any, in respect thereto, the verdict of the jury, if any, the judgment and sentence, and the original of the transcript of the proceedings at the trial.

"The State's Attorney shall file an answer to the petition within 30 days after the copy of the record is required to be transmitted by the clerk of the trial court.

procedural machinery for obtaining copies of stenographic transcripts, of trial proceedings, by indigent prisoners, (in felony or misdemeanor cases) but, and among other matters, it contains the following: "In the event the court finds that it is *impossible* to furnish petitioner a stenographic transcript of the proceedings at his trial because of the unavailability of the court reporter who reported the proceedings and the inability of any other court reporter to transcribe the notes of the court reporter who served at the trial, *or for any other reason*, the court *shall deny* the petition [for a stenographic transcript.]" (Italics added.) Coincidently, this quoted passage neatly fits Westbrook's case, and, points up the futility of a petition by him under Rule 65–1; the mandatory denial would be inescapable in face of Halligan's uncontroverted affidavit.

Whatever significance can be derived from the passage quoted out of Rule 65–1, the complete omission of any provision regarding a bystanders' bill must be important. We think Illinois should be bound by the statements its Supreme Court published in the Griffin opinion on remand and its silence about bystanders' bills, in that later opinion and Rule, is a fair manifestation that such procedure is so archaic and infrequent that even Illinois Justices avoid mentioning it. By marginal note 4, Mr. Justice Black, in his Griffin opinion (351 U.S. 12, 14, 76 S.Ct. 585, 588, 100 L.Ed. 891) recalled that: "In oral argument counsel

for Illinois stated: 'With respect to the so-called bystanders' bill of exceptions or the bill of exceptions prepared from someone's memory in condensed and narrative form and certified to by the trial judge—as to whether that's available in Illinois I can say that everybody out there understands that it is but nobody has heard of its ever being actually used in a criminal case in Illinois in recent years. I think if you went back before the days of court reporting you would find them but none today. And I will say that Illinois has not suggested in the brief (filed in the Griffin case) that such a narrative transcript would necessarily or even generally be the equivalent of a verbatim transcript of all of the trial.'" Even if the Attorney General still persists in his contention that Westbrook ought to be "remitted" to a bystanders' bill at least the Illinois Supreme Court has, with commendable fairness, recognized the practical difficulties confronting an incarcerated prisoner who tries assembling and reconstructing such a record. Actually common sense and a slight sense of fairness, plainly shows how formidable the task the Attorney General demands be thrust on Westbrook. But I am unsatisfied with the notion that Westbrook should be penalized on the basis he failed to exhaust his state remedies because somehow he should have unearthed a concededly dormant primitive procedural device. And I also point to Westbrook's prompt request for the transcript in 1948 and his steady

"Except as is otherwise provided in this rule, Rule 27 applies to and governs all proceedings, practice and procedure in this court and the Appellate Court as to applications for and writs of error granted under this rule.

"If upon examination of the petition, answer and record it does not appear there is reasonable ground to believe that prejudicial error occurred in the proceedings that resulted in petitioner's incarceration, the application for writ of error shall be denied."

See also S.H.A. ch. 110, § 101.65–2, Supreme Court Rule 65–2, adopted November 12, 1957, providing:

"All distinctions between the common-law record and the bill of exceptions or report of proceedings at the trial, for the purpose of determining what is properly before the reviewing court in a criminal case, including petitions for writ of error under Rules 27 and 65–1, are abolished. A claim that any matter in the transcript of the trial court record filed in the reviewing court is not authentic may be raised only by a motion, supported by affidavit, filed by a party in the reviewing court before or at the time of filing his brief. All matters in the transcript of the trial court record actually before the reviewing court may be considered by the reviewing court for all purposes, but if not properly authenticated the reviewing court may order further authentication."

adherence to that claim, as a distinguishing aspect of this case. My suggested disposition must be read in this particular setting and not envisaged as an open sesame for any case where Illinois is unable to locate shorthand notes taken during a criminal trial.

Under Rule 65–1 review can be had after the time has expired for certification of a bill of exceptions, for any prisoner if the stenographic notes of his trial are available. But Westbrook, whose record is unavailable due to an act by, or omission of, the official court reporter, a state employee (Ill.Rev.Stat. 1957, chap. 37, §§ 163a, 163b; first enacted in 1927) is without hope of right under the new Illinois Supreme Court Rule—he is deprived of the time for certification waiver through no fault of his own. The distinction between available and unavailable records is, no doubt, a practical one since prisoners might be led to demand that Illinois grant relief in instances where old notes cannot be currently produced. Yet Westbrook requested his record immediately after trial, in 1948, and before the Illinois Supreme Court adopted Rule 65–1.

Only when activated by an order of the district judge, below, did Illinois trouble to recognize Westbrook's allegations concerning the lost notes and, only then, did it finally state: "The family of Mr. Robert Halligan was contacted by the Attorney General to ascertain his availability for presentation of testimony in this court. Mr. Halligan is still afflicted with multiple sclerosis and is unable either to be present in court or to render a statement regarding the circumstances surrounding the post trial motions and loss of his minutes." Certainly if the Illinois Supreme Court thinks all prisoners in non-capital criminal cases, should have review out of term and statutory time on a stenographic transcript, instead of reconstructed records that view ought not to be lightly overridden by arguments of the Attorney General. Accordingly I would follow the Illinois Supreme Court's view that its state prisoners are entitled to appellate review in non-capital cases and, since Westbrook has never had that opportunity, due to the unexplained loss by a state employed official court reporter, the judgment below should stand. I would affirm without any strings attached.