(No. 37379.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK DUCKETT, Plaintiff in Error.

*Opinion filed September 23, 1966.*

ELLIOTT I. GOODMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KIS-

SANE and ALBERT J. ARMONDA, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

In November, 1961, the defendant was tried by jury in the criminal court of Cook County and convicted of the crime of armed robbery for which he was sentenced to the penitentiary for a term of not less than five nor more than ten years. We issued a writ of error in September, 1962, and appointed counsel to represent the defendant. Due to circumstances which will be related herein the transcript of the testimony at the defendant's trial was not filed in this court until October, 1965, and a supplemental transcript was not filed until March, 1966. Defendant seeks reversal of the judgment of conviction on the sole ground that he has been deprived of his constitutional right to an effective review of his conviction by reason of this delay.

The record shows that three days after the defendant's trial a petition was filed seeking a free transcript of the testimony under Rule 65—1 and an order was entered granting the petition. The reporter at the defendant's trial failed to transcribe her notes, and in September, 1963, the State's Attorney of Cook County filed a petition in the trial court seeking a rule against Miss Beverly Richton, the reporter, to show cause why she should not be held in contempt of court for failure to transcribe this record and seven other records. From correspondence between the office of the State's Attorney and the sheriff of Cook County, which has been incorporated in the defendant's brief, it appears that the sheriff's office had been unable to serve or apprehend Miss Richton and the State's Attorney's office gave the sheriff's office certain possible leads to Miss Richton's location so that process could be served upon her. It also appears from a supplemental record filed by the State that in March,

1964, an order was entered directing that a duplicate copy of the petition, rule and warrant be issued to the State's Attorney's police for service upon Miss Richton. The record does not disclose whether she was ever served nor does it show any further action upon the contempt petition. However, the testimony was eventually transcribed by Miss Richton and filed in April, 1965. In December, 1965, she filed the last record, consisting of a portion of the arguments of counsel, and at that time submitted a certificate in which she said that approximately six or seven months prior to April, 1962, she became ill as a result of excessive strain during the course of a trial and that when she did not recover within about a month she sought medical help. She also stated that an electrocardiogram was taken and certain medication, identified as appropriate medication for angina pectoris and coronary insufficiency, were prescribed and that the original dosage of one of these drugs had been increased approximately four times in February, 1965. In this certificate she also said that she developed a chest infection as a result of untreated pneumonia; that she had undergone surgery on several occasions, once with a near fatal reaction in 1962; and that she had been hospitalized for chest pains and had received emergency-room treatment for these pains. She further stated that while she was in California in 1962 she developed an asthmatic condition requiring intravenous and subcutaneous injections of drugs and that she still required weekly injections of medication to maintain her health. In 1963 she underwent a Caesarean section for childbirth. She stated that her mother, who was a doctor in California, had supplied her with medication and had given her daily injections while she was in California. She concluded with the statement that as a result of these conditions she had been unable to work in court as a court reporter and had been unable to transcribe any records. She said that in March, 1965, her mother came to Chicago to assist her with the care of her daughter while she prepared the transcript

in the defendant's case, which was the last of the eight transcripts referred to in the petition filed by the State's Attorney.

Although the transcript has now been filed, the defendant personally and by his attorney has specifically waived his right to rely on any errors which might be disclosed by the transcript. He bases his claim for relief in this court solely upon the argument that the long delay in furnishing the transcript has deprived him of his right to a meaningful appeal. In this connection the defendant points out that his minimum sentence will probably be expired by the time an opinion could be entered by this court on the merits of the case as revealed by the transcript and he contends that under such circumstances his appeal is meaningless. He, therefore, asks that the judgment of the trial court be reversed. The defendant's claim is based principally on *Griffin* v. *Illinois,* 351 U.S. 12, 100 L. Ed. 891, and *Eskridge* v. *Washington State Board,* 357 U.S. 214, 2 L. Ed. 2d 1269. In *Griffin* the court held that a State could not constitutionally deprive a defendant of effective appellate review by denying him a transcript solely because he was unable to pay for it. In response to the *Griffin* case we adopted Rule 65—1 providing that an indigent defendant must be provided with a free transcript for purposes of appellate review. The holding in *Griffin* is that a State may not discriminate against a defendant because of his poverty and thereby deny him a right to appeal. The present case is not governed by the rule in *Griffin,* for here the trial court promptly ordered a free transcript for the defendant upon his showing of indigency. He was not discriminated against because of a lack of funds and, from the facts appearing in the record with respect to the efforts of the State's Attorney's office to obtain the transcript and concerning the physical condition of the reporter, there is nothing which would lead us to believe that the defendant would have been any more successful in obtaining the record if he had had sufficient funds to pay for

the transcript. In our opinion there has been no denial of the equal protection of the laws here as there was in the *Griffin* case. The holding in *Eskridge* was that persons convicted before the 1956 decision in the *Griffin* case were also to have free transcripts. Since the defendant here was convicted after that date there is nothing in *Eskridge* to support his position.

Because of the matters stated in this opinion we are of the opinion that the delay here can not be attributed to the State. But even if it could be said that the State might in some degree be responsible for this delay, either on the theory that the reporter was a State official or because the State did not make a more determined effort to compel the transcription of the notes, the relief sought by the defendant is inappropriate. In the *Griffin* case itself, which went to the Supreme Court on *certiorari* from our denial of a post-conviction writ of error, the remedy granted by the Supreme Court and by this court on remand was not a new trial or discharge but an order directing that the transcript be furnished. In *People* v. *Dean*, 31 Ill.2d 214, we had originally refused to consider a transcript because it was not certified. (*People* v. *Dean*, 28 Ill.2d 403.) Because of subsequent opinions of the United States Supreme Court, we concluded that the report of proceedings should have been considered by us and that our former consideration of the case had deprived the defendant of full appellate review. We then proceeded in the later *Dean* opinion to consider the alleged errors presented by the transcript and affirmed the judgment of conviction. In *Patterson* v. *Medberry*, 188 F. Supp. 557 (D.C. Colo. 1960, affd. (10th cir.) 290 F.2d 275), a Federal court *habeas corpus* proceeding brought in 1960 to review a 1939 conviction, there was no transcript. The order of the court provided that unless within eight months the State Supreme Court provided the defendant with a transcript and a review of his trial he should be given a new

trial or be discharged. In *State* v. *Jenkins,* 61 Wash. 2d 97, 377 P.2d 406, the court order a new trial where a transcript had been improperly denied, *unless a transcript was furnished.* In *Baragan* v. *Eyman,* 93 Ariz. 227, 379 P.2d 900, the trial court had improperly denied a motion by the defendant for leave to appeal as a poor person. In an original *habeas corpus* proceeding in the State Supreme Court the court refused to discharge the defendant and directed the trial court to hold a hearing on the defendant's indigency and grant him a free record and leave to appeal as a poor person if he were in fact indigent. The court stated that so long as the defendant obtained the appellate review to which he was entitled constitutional guarantees did not require a discharge. In *Dowd* v. *United States,* 340 U.S. 206, 95 L. Ed. 215, 71 S. Ct. 262, a Federal *habeas corpus* proceeding, the Supreme Court found that the Indiana court had illegally deprived the defendant of his right to appellate review. The court held that justice did not require Indiana to discharge the defendant if an appeal was granted and the record revealed that the trial court had been free from error. In a case where a transcript was not available through no fault of the defendant a Federal district court had ordered that the defendant be discharged since he could not obtain effective review. The court of appeals agreed that the defendant was illegally held, but ordered a new trial rather than discharge. (*United States ex rel. Westbrook* v. *Randolph,* (7th cir.) 259 F.2d 215.) That case may be distinguished from the other cases cited herein and the present case in that there was no means of obtaining a transcript.

In our case appellate review has been delayed through circumstances adequately explained. However, the defendant has not been deprived of complete appellate review on a full record. The record is here, available for counsel's use, and we stand ready to determine any issues which might be raised on that record. However, the defendant has know-

ingly and understandingly waived his right to such a review. Under these circumstances he is not entitled to a reversal of the judgment of conviction and the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*