**Robert Glen SUTTON and Paul S. Sutton, Petitioners-Appellees,**

v.

**Russell E. LASH, Warden, Indiana State Prison, Respondent-Appellant.**

**No. 77–1852.**

United States Court of Appeals, Seventh Circuit.

Submitted March 8, 1978.

Decided May 22, 1978.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellant.

Jerald L. Kendrick, Harlan, Ky., Gregory A. Adamski, Chicago, Ill., Eugene C. Hollander, Indianapolis, Ind., for petitioners-appellees.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

PER CURIAM.

The warden of the Indiana State Prison at Michigan City appeals from an order granting the petitions for writs of habeas corpus by Paul and Robert Sutton. District Judge Robert Grant ordered the two prisoners, who are brothers, released as a result of the failure to provide a transcript of their trial which occurred over twenty-one years ago.

### Background

In order to understand the issues raised by petitioners it is necessary to review the extended procedural history of the Suttons' case. The litigation underlying this habeas corpus proceeding dates back to 1956. On December twentieth of that year, Paul and Robert Sutton were found guilty of kidnapping, auto banditry and rape. Both were indigents and both were represented by a court-appointed attorney. The Suttons were sentenced to life imprisonment for kidnapping, 25 years for auto banditry, and 2 to 21 years for rape. The Suttons timely moved for a new trial. Their motions chal-

lenged the judgment, the jury composition, and the admission of certain evidence.

On January 21, 1957, Robert Sutton requested an interview with the Indiana Public Defender. The Suttons' motions for a new trial were denied on May 1, 1957. On that date, the 90-day period prescribed by Indiana law at the time for filing notice of appeal began.

On May 28, 1957, the Suttons timely filed a *pro se* affidavit of paupership and verified motion to obtain their trial transcript. In their verified motion, they cited the then recent case of *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956),[1] and stated:

> Petitioners herein desire to file an appeal of their conviction, and having insufficient funds to secure their Transcript of their Trial file this motion within the sound discretion of this court, requesting that this court intercede upon their behalf and issue an order directed to the clerk of said court to prepare a complete and certified copy of the Transcript and court journal entries, and that same be mailed to petitioners respective address, and that cost thereof be assessed to the county for same.

The Suttons further stated that they were unable to pay the necessary cost to secure their transcript of their trial, and without said transcript petitioners shall be unable to properly prepare their appeal before the court, and would thereby be deprived of right to properly defend their cause, which deprivation thereof would constitute a flagrant violation of their constitutional rights.

On June 3, 1957, the trial judge denied the Suttons' request for the trial transcript, citing the Indiana Supreme Court's decision in *State ex rel. Fryer v. Murray*, 236 Ind. 704, 141 N.E.2d 700 (1957), which reaffirmed Indiana's practice that in all post-conviction proceedings by indigents *after their direct appeal rights had expired* [emphasis added], trial records were available only upon the request of the Indiana Public Defender after he or she determined that the prospective appeal was meritorious.[2] Based on this precedent, the trial judge advised the Suttons by letter:

> If you desire to appeal this matter, it will be necessary that you communicate witht [sic] the Public Defender who is employed by the State of Indiana for this purpose.[3]

Paul Sutton, by letter dated June 18, 1957, requested the Public Defender's assistance in securing a transcript, expressly basing this request, and quoting from, the letter of the trial judge. The letter stated, in regard to the transcript that he did "not have sufficent [sic] funds to secure same, in the matter of counsel to represent me in this matter of appeal." He further states "I desire to reserve this right until I have examined the transcript of the trial. . . ." A reading of the letter clearly indicates that the Suttons wished to appeal their convictions, that they wished to do so *pro se*, and that they only desired the assistance of the Public Defender in obtaining a transcript of their trial. The Public Defender did not respond prior to the running of the period to file a timely appeal.[4]

---

**1.** *Griffin* basically required that, because states must allow indigents and non-indigents the same right to appeal criminal convictions, the state must insure that an indigent receives a free trial record or an otherwise adequate means of review.

**2.** This practice was later declared unconstitutional by the United States Supreme Court in *Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963).

**3.** It is apparent from the record that this "advice" was erroneous. Under Indiana statute in effect at the time, Burns Ind.Stat.Ann. § 13–1402, § 13–1405 (1956 Replacement) *See State*

*ex rel. Fryer v. Murray*, 236 Ind. 704, 141 N.E.2d 700 (1957), the law relied on applied to post-conviction remedies. Apparently, the trial judge either misunderstood the application of the law or erroneously believed that the period for filing notice of appeal had already run.

**4.** The Public Defender finally did respond on September 6, 1957. The letter stated that an interview was not granted at that time because the Defendant's office could not act until appeal rights had expired. The letter further advised that their only remedy was to privately purchase the transcript.

On August 26, 1957, shortly after their deadline to perfect a timely direct appeal of their convictions, the Suttons filed in the Indiana Supreme Court a *pro se* petition entitled "Belated Appeal from Grant Circuit Court." They requested preparation of a transcript "for use to perfect their appellants brief."

The Supreme Court of Indiana rejected the petition, holding that a requisite prima facie case showing merit in the proposed appeal was lacking. *Sutton v. State*, 237 Ind. 308, 145 N.E.2d 425 (1957). In regard to a request for their transcript, the court responded:

> Since the State has created the office of Public Defender to represent pauper prisoners after the regular time for appeal has expired, their record must be obtained through the Public Defender as prescribed by statute. (Citations omitted.) [5]

In 1964 the Suttons again contacted the Public Defender who filed a petition to correct an erroneous sentence and a motion for a new trial. The trial court denied the petition and the motion. The Indiana Supreme Court reversed and corrected the sentence,[6] but affirmed the denial of the new trial.

In 1970 the Suttons contacted the clerk of the court where they were originally tried and attempted to purchase a copy of their trial transcript. On September 8, 1971, Paul Sutton filed for post-conviction relief in the state court. When no action was taken for two years he filed a petition for a writ of habeas corpus in the federal district court. On October 24, 1973, Robert Sutton's petition, filed July 23, 1973, was consolidated with his brother's petition. Their petitions asserted that the failure of Indiana to allow them a transcript was a denial of their constitutional rights to due process and equal protection.

On January 11, 1974, a Grant County Circuit judge revealed by letter to the Suttons that, some time in 1968 or 1969, matters essential to the trial record, including the stenographic notes, were destroyed by order of the Grant County Board of Commissioners. Apparently without knowledge of this letter, the district court, on March 11, 1974, denied the petitions for failure to exhaust state remedies, noting that it appeared that he "will soon be able to order a copy of his transcript." It invited Indiana to submit evidence that Paul Sutton had rejected the Public Defender's assistance and that he either had not petitioned for or had received his transcript.

On April 1, 1974, Indiana advised the district court that there was no transcript, but that Paul Sutton's petition was nevertheless defective because he had not exhausted his state remedies.

On April 5, 1974, Robert Sutton again began post-conviction relief proceedings in Grant County Circuit Court.

On July 17, 1974, the district court agreed with Indiana on Paul Sutton's petition, holding that unexhausted state remedies existed and that

> [t]he effect of the loss of the transcript of petitioner's trial upon his claims should be decided in the first instance by the state courts.

At this point, federal proceedings ceased while the Suttons further pursued their state remedies.

On October 29, 1974, an Indiana Circuit judge ruled that the Suttons were entitled to no post-conviction relief because their 1957 timely-filed motion for new trial had been denied by Judge Caine and because they had not perfected, and therefore waived, a direct appeal in 1957. The Indiana judge also held that the proper procedure would be to file a belated appeal to the Indiana Supreme Court.

---

**5.** According to affidavits filed by the Suttons on a petition for rehearing before the Indiana Supreme Court on June 8, 1977, they did not become aware of the contents of this opinion until 1963 or 1964.

**6.** *Sutton v. State*, 248 Ind. 1, 221 N.E.2d 430 (1966).

The Suttons did file another petition for a belated appeal on December 31, 1974. The Indiana Supreme Court denied relief on April 7, 1977, holding that the Suttons'

> failure to have ever had a complete record of all of the evidence in the case does appear directly to have been the fault of petitioners in not having long ago followed the directions of both the trial court and of this Court. Their actions, by not seeking the appellate services of the Public Defender, have effectively prevented the exhaustion of normal appellate state court remedies.

The Suttons moved the district court to reinstate their habeas corpus petitions. On June 13, 1977, the district court granted the writs. This appeal followed.

## I. Waiver Of Appeal

The primary issue raised by the State of Indiana is that the Suttons long ago waived any right to direct appeal and to a transcript. It is uncontroverted that there was no timely notice of appeal filed following the Suttons' conviction. Indiana contends, therefore, that the Suttons waived their acknowledged right to appeal. It is argued that this right was waived because

> two courts had pointed out that the Public Defender of Indiana was available to prosecute a belated appeal, and that by statute only the Public Defender could obtain a free transcript for use on appeal.

The two courts referred to are the Grant County Circuit Court and Indiana Supreme Court.

The letter from the Grant County trial judge did advise the Suttons to contact the Public Defender, which is what they immediately did. Yet no response was received. Under *Griffin, supra,* at the time, the Suttons were entitled to secure a transcript or, alternatively, the state was obligated to provide adequate appellate review, due to their undenied indigency. Their letter made it apparent that they wished to appeal, yet the Public Defender failed to respond within the notice period.

When waiver is in issue the state scheme must be viewed to determine at what point waiver of the right will take place. Under Indiana statute a belated appeal is permitted. Ind.Anno.Stat. § 9-3305 (repl. vol. 1956). Thus waiver of appeal is not mandatory for failure to file notice in Indiana because the Indiana Supreme Court is granted the discretion to permit a belated appeal. In Indiana, at the time, a court could sustain a motion for a belated appeal if the defendant could show sufficient cause to excuse the delay in noting the appeal. *State ex rel. Casey v. Murray,* 231 Ind. 74, 106 N.E.2d 911 (1952).

When the Suttons petitioned the Supreme Court to obtain a transcript, their petition was treated as a statutory motion for a belated appeal. With their *pro se* petition the Suttons filed the brief motion for a new trial originally filed in the trial court by their court-appointed attorney. That motion set forth two general grounds for relief:

1. The finding of the court is not sustained by sufficient evidence.
2. The finding of the court is contrary to law.

Without the assistance of a transcript the Indiana Supreme Court concluded there was insufficient merit in the proposed appeal. On this basis their request for a transcript was denied. On the basis of this decision the Indiana courts steadfastly continued to deny the Suttons a transcript for the next twenty years.

Thus because the Suttons relied on the direct advice of the trial judge, it appears that right to an effective appeal was foreclosed. On this point the case of *Macon v. Lash,* 458 F.2d 942 (7th Cir. 1972), is particularly relevant in determining the issue of waiver. Macon was convicted of murder in 1961. After filing motions for an extension of time in which to file a motion for a new trial[7] and for a free transcript, his trial counsel withdrew. The notice period for filing an appeal expired.

---

7. The motion alleged insufficiency of the evidence and a particular failure to grant a continuance as errors. *Macon v. Lash, supra* at 944.

In his habeas petition Macon alleged ineffective assistance of counsel for failure to advise him of the need to file timely notice of appeal. There was no indication in the record that the appeal would have been frivolous or that Macon intended to waive his right to appeal. Prior to the federal petition, Macon filed five petitions in the Indiana Circuit Court and seven applications in the Indiana Supreme Court.

This court, after finding that state remedies had been exhausted,[8] concluded that a defendant's right to appeal could not be forfeited by the "critical error of inexperienced court-appointed counsel" in failing to file the proper motion and in failing to advise the defendant regarding timely notice of appeal. *Macon, supra* at 950. The court held that

> [a]bsent evidence of an intelligent waiver or an appraisal by counsel comparable to that required by *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, we believe the state was constitutionally required to protect petitioner's right to appeal, particularly since his motion for an extension of time was filed before the time to appeal had expired, and therefore evidenced a desire to appeal. *Id.*

Analogously, the Suttons' right of appeal is the result of the failure of their counsel to properly advise them as well as their obvious lack of knowledge of how to preserve their right to appeal. Here the Suttons filed a motion for a new trial and, in addition, clearly evidenced a "desire to appeal" in their timely letters to the trial court judge and the Public Defender. As in *Macon*, evidence of the requisite intelligent waiver is lacking.

In *Macon* this court required the Indiana Supreme Court to grant the petitioner a transcript and to hear Macon's appeal. The Suttons did not intelligently waive their rights to an appeal, but their petition to the Supreme Court for a transcript, treated as a petition for a belated appeal, was denied. The question then arises whether the "belated appeal" to the Indiana Supreme Court afforded adequate appellate review of the Suttons' convictions.

In *Medberry v. Patterson*, 188 F.Supp. 557 (D.Col.1960), *aff'd sub nom., Patterson v. Medberry*, 290 F.2d 275 (10th Cir.), *cert. denied*, 368 U.S. 839, 82 S.Ct. 59, 7 L.Ed.2d 39 (1961), similar to *Macon*, no notice of appeal was filed but, similar to the instant case, a request for a transcript was made. The motion was denied. Thereafter, this denial, along with an abstract and briefs, was permitted to be docketed before the Colorado Supreme Court. That court denied petitioner's request for a transcript *and* affirmed the conviction. Significantly, only five issues were presented, the petitioner contending that lack of a transcript prevented him from arguing other errors committed during trial. Medberry petitioned the federal court, but his petition was denied for failure to exhaust his available state collateral remedies. After no action was taken by the Colorado courts, the federal district court entertained Medberry's petition.

The state of Colorado contended that Medberry had failed to exhaust state remedies or had waived full appellate review. The district court disagreed, finding that

> because of lack of transcript, Medberry was not accorded an adequate appellate review within the requirements of the Griffin and Eskridge [v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958)] decisions. 188 F.Supp. at 564.

In affirming the granting of the petition in *Medberry* the Tenth Circuit Court of Appeals noted that

> If the state has refused to furnish the free transcript to which an indigent defendant is entitled, the taking of an appeal on a record which is not sufficient for adequate appellate review does not destroy that right. 290 F.2d at 277.

This is directly applicable to the Suttons' predicament. The Indiana Supreme Court considered a record more skimpy than the Colorado court relied on in *Medberry*. And although the district court in *Medberry* con-

---

8. Failure to exhaust state remedies is not raised by the appellant in this appeal.

sidered the potential merit of the appeal important, that test is not applicable here.

■ In *United States ex rel. Singleton v. Woods*, 440 F.2d 835 (7th Cir. 1971), this court held that the underlying merits of an appeal have no bearing on the question of restoring fundamental appellate rights where they have been wrongfully denied. In overruling *Victor v. Lane*, 394 F.2d 268 (7th Cir. 1968), the court adopted the dissenting opinion of Judge Swygert wherein he reasoned that

> [o]nce sufficient excuse for delay is advanced, the equal protection clause of the Constitution should prevent a state from imposing a more rigorous standard on defendants seeking a belated appeal than on those seeking a timely appeal. *Id.* at 272.

Such is the Suttons' case. After having made timely requests for a transcript and showing a clear desire to appeal their convictions, the Indiana Supreme Court denied a transcript and affirmed their convictions because their petition failed to show merit in the proposed appeal. *Sutton v. State*, 237 Ind. 308, 145 N.E.2d 425 (1957).

■ The Suttons did not intelligently and knowingly waive their right to appeal. They demonstrated a clear desire to do so, evidenced by formal motion and by letters to the trial judge and the Public Defender. Under *Medberry* and *Singleton* the consideration given their case by the Indiana Supreme Court did not afford them full and adequate review of their convictions. *Cf. United States v. Randolph*, 259 F.2d 215 (7th Cir. 1958). Because the Suttons did not waive the right to full and adequate review of their convictions, they have suffered the kind of de facto denial of appeal by refusal of a transcript found by the Supreme Court in *Griffin* to result in a denial of equal protection of the laws.

## II. Prejudice To The State

The State of Indiana argues that even if there was no waiver it has been so prejudiced by the Suttons' delay in bringing this petition that it should have been dismissed pursuant to Rule 9 of the Rules Governing § 2254 cases, 28 U.S.C.A. The state asserts that assuming a right owed petitioners was violated, the delay in asserting that right has caused irreparable prejudice to the state.

■ Lapse of time alone will not warrant the denial of the issuance of a writ of habeas corpus. *Hairston v. Cox*, 459 F.2d 1382 (4th Cir. 1972), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2266, 36 L.Ed.2d 963 (1973) (26 years); *Hawkins v. Bennett*, 423 F.2d 948 (8th Cir. 1970) (44 years); *Accord Palmer v. Ashe*, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951). Indiana urges nothing more than this. As the Supreme Court noted in *Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116, 123, 76 S.Ct. 223, 227, 100 L.Ed. 126 (1956),

> "[t]he sound premise upon which these holdings rested is that men incarcerated in flagrant violation of their constitutional rights have a remedy."

■ The Suttons have been denied their right to a transcript and to adequate appellate review, a right which the state was constitutionally required to protect. *Macon, supra.* In addition, such a denial is certainly commensurate with the violation of due process found in *Claudy, supra*, wherein the petitioner had not been informed of his right to appointment of counsel. As such, the delay, in itself, does not warrant the denial of the petition.

## III. Evidentiary Hearing

■ Indiana next contends that even if there was no waiver and the trial court properly assumed jurisdiction, the court erred in failing to hold an evidentiary hearing. It is not necessary that a district court hold a hearing, but that it need only dispose of all unresolved questions, whether of fact or law or mixed. *United States ex rel. Burage v. Pate*, 316 F.2d 582 (7th Cir. 1963).

■ It is significant that the appellant did not request an evidentiary hearing in the district court, nor does it suggest any fact which was not known by the district court. The state of Indiana does not dispute the existence of the documents which

were submitted as exhibits with the verified petition. What the appellant contends are disputed facts are actually mixed questions of fact and law. As such, they require the application of a legal standard to the historical-fact determinations, and are not facts in the sense of the facts which must be ascertained at a hearing in order to predicate a decision of the ultimate constitutional question. *See Townsend v. Sain*, 372 U.S. 293, 309, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In contending that the issue of waiver is in dispute, the state disputes the application of a constitutional principle to a historic fact, rather than disputing the fact itself. Such disputes, under the reasoning of *Townsend*, are not the type of "issues of fact" which require the holding of an evidentiary hearing. In this context it was not error to fail to hold an evidentiary hearing.

### IV. Relief

The sole remaining issue is whether the district court acted properly under the circumstances by releasing the Suttons from custody, conditioned only on appeal to this court. Indiana contends that the proper relief should be to remand to the court of conviction for a new trial or to allow the state to reconstruct the trial record for purposes of appeal.

### a. Reconstruction

Indiana suggests that its courts should be permitted to determine whether a transcript can be reconstructed under Rule 7.2(A)(3)(c), Ind.Rules of Appellate Procedure. This rule contemplates a situation where the transcript is unavailable. Under the rule, a party may prepare a statement of the evidence from the best available means, including recollection.

The relief granted by the district judge is within his sound discretion. In view of the length of time since the trial as well as the failure of the state to provide a transcript when presented with the opportunity, it was not an abuse of discretion to fail to allow the state to reconstruct the record of the trial. This conclusion is supported by the decision in *Pate v. Holman*, 341 F.2d 764 (5th Cir. 1965). The Fifth Circuit Court of Appeals held that where it is determined that the petitioner has been unconstitutionally deprived of his right to adequate review, where there has been a considerable lapse of time (here 15 years), and where there is no transcript available, there was no way to provide adequate appellate review. *Id.* at 777.

### b. Release from Custody

The final consideration then is whether the release granted by the district court, conditioned only on appeal to this court, was appropriate. In the case of *United States v. Randolph*, 259 F.2d 215 (7th Cir. 1958) (Schnackenberg, J., concurring; Finnegan, J., dissenting), this court was faced with a situation where the district court had granted a writ of habeas corpus based on a finding that the failure to allow the petitioner a transcript of his original trial had deprived him of a right to full appellate review. The majority apparently agreed that the petitioner had been deprived of a right of constitutional dimension. But the court found that unconditional release was inappropriate. It was determined that under this circumstance, where there is no possibility of appeal yet where the petitioner had repeatedly sought adequate review or a new trial and was so entitled, the district court should not disturb the custody of the prisoner. *Id.* at 217–18. Finding that there was ample authority to remand the prisoner to the state court which tried him originally to vacate the judgment of conviction and to grant a new trial, the court determined that unconditional release was inappropriate.

The remedy of remandment to the state trial court for a new trial in these instances is further supported by the opinion in *Pate v. Holman, supra.* There Judge Wisdom suggested that remandment was appropriate under a similar circumstance, citing the district court opinion in *Coffman v. Bomar*, 220 F.Supp. 343, (M.D.Tenn.1963) wherein that court had found that

the proper course to be taken by this Court is to award the petitioner the maximum relief that he could have obtained if his appeal had been properly perfected and he had been successful in prosecuting it. This can be accomplished by directing that the petitioner be accorded a new trial, if the state desires to retry him for the offense charged in the first count of the indictment, and otherwise that he be released from custody. Such a disposition will vindicate the petitioner's constitutional rights and operate to correct the constitutional error committed against him. As pointed out in *Dowd v. United States ex rel. Cook,* [340 U.S. 206, 71 S.Ct. 77, (1950)] "[t]he District Court has power in a habeas corpus proceeding to 'dispose of the matter as law and justice require.' 28 U.S.C., § 2243." 341 F.2d at 777. *See also Cline v. Beto,* 418 F.2d 549 (5th Cir. 1969). Such relief is appropriate here. But considering the long and tortuous maze of judicial proceedings now comprising the history of this case, a new trial, if there is to be one, should be accorded within a reasonable time. Therefore, we affirm the judgment of the district court except as it relates to the unconditional release of the petitioners. That part of the judgment is reversed and the cause remanded to the district court with instructions that it remand the petitioners to the Circuit Court of Grant County, Indiana, with directions to the latter court to vacate the judgment of conviction and to grant the petitioners, Robert and Paul Sutton, a new trial. Upon the failure of the Circuit Court of Grant County, Indiana, to vacate the judgment of conviction and to grant a new trial within six months after the date of actual physical delivery of petitioners to the custody of the Indiana court, the petitioners shall be finally discharged from custody.

PELL, Circuit Judge, dissenting.

I am not unmindful that in the case of a state prisoner petitioning for a grant of a writ of habeas corpus in the federal court system, a federal court may very well grant some form of habeas relief, notwithstanding that:

(a) the petitioner was convicted following an essentially fair trial;

(b) the judgment of conviction was reviewed by the highest court of the state and was affirmed;

(c) post-conviction remedies were pursued in the state court system without success;

(d) the petitioner was represented by counsel during the trial in the state court;

(e) the events leading to the trial and the trial itself occurred nearly two decades prior to the filing of the petitions;

(f) the crime of which the petitioner was convicted was an egregious one;

(g) the petitioner is clearly guilty of the crime of which he is convicted; and

(h) witnesses who testified at the trial may be deceased or otherwise unavailable or, in any event, be unable to resurrect long dormant knowledge of the events as to which they testified.

Nevertheless, irrespective of any aspects of comity, the deprivation of a constitutional right in the state court proceedings can be determined to be sufficient to require the granting of the Great Writ, and I do not quarrel with this fundamental principle. On the other hand, I do not believe that when a substantial number of the above factors are coexistent the federal court should be other than cautious in granting habeas relief, which, particularly in the situation of the long lapse of time, may effectively frustrate further state criminal procedures.

I regard the present case as one in which habeas should not have been granted. It appears obvious to me that, notwithstanding a request directed to the Public Defender for an interview and later a request to that office for assistance in securing a transcript, the petitioners well within the time for appeal were knowledgeable with regard to their rights as reflected by their citing a recent Supreme Court case. They nevertheless refrained from taking steps to institute a timely appeal. Further, the long period of time that followed without any

activity was such that the stenographic notes essential to the trial record were destroyed. Activity of any sort on the part of these petitioners during the ten years after their conviction by way of seeking to secure the transcript as to the initial trial would have obviated the result now reached by the majority because the transcript itself would have been a first line basis for determining whether there had been a denial of constitutional rights.

The majority opinion in the present case while refraining from the district court's outright grant of habeas has given the state the alternative of releasing the petitioners or retrying them with all of the attendant difficulties for a successful prosecution at this late date. It appears to me that in any event the relief that should have been granted here should be no more than that an evidentiary hearing in the district court should be held. It further seems to me, however, there is sufficient doubt in the pleadings to have required the district court to hold a hearing on the issue of waiver. *See Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The failure to pursue an appeal through proper procedures for an inexcusable length of time, the failure to take advantage of the services of two different attorneys, the prejudice resulting to the state from the delay, the state's interest in the finality of its criminal judgments, the determination of waiver by the Supreme Court of Indiana, and the presumption in favor of regularity of state proceedings all militate in favor at the least of a requirement of clarification by a district court evidentiary hearing.

In sum, inquiry into the facts is necessary in my opinion before we intrude into the state procedures here involved. Finally, there are just too many gaps in the situation to be credible for habeas relief at this time. I therefore respectfully dissent.