**Robert LUMBERT, Plaintiff-Appellant,**

**v.**

**Morgan M. FINLEY, Clerk of the Court, Defendant-Appellee.**

No. 81-2038.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 1983.

Decided May 16, 1984.

Jeffrey S. Heller, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiff-appellant.

Mark R. Davis, Asst. State's Atty., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and ESCHBACH and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant, Lumbert, appeals from a final judgment of the district court dismissing his *pro se* civil rights action against the defendant-appellee, Finley, the Clerk of the Circuit Court of Cook County, Illinois.*

I

In his complaint, Lumbert, an inmate at the Stateville Correctional Center, alleged that Circuit Court Clerk Finley, having been notified that Lumbert was representing himself on appeal of his conviction of

---

* By order dated April 12, 1983, this court appointed counsel to represent Lumbert on appeal, and ordered counsel to file a supplemental brief addressing specified issues. Counsel did so. By order dated December 5, 1983, this court granted Lumbert's motion to discharge counsel and denied his request to orally argue his appeal. We further appointed counsel to argue this appeal as *amicus curiae*. We are grateful for counsel's assistance in this matter.

murder, refused and continued to refuse to send him his trial transcript; that approximately eight months had passed since Finley had notified him that the transcript was ready; that Lumbert had, on numerous occasions, properly authorized Finley to send the transcript; and that Lumbert had requested that Finley notify him if he was not following the correct procedure to obtain his transcript. Lumbert charged that Finley was a participant in a "massive criminal conspiracy" to deny Lumbert his constitutional right of self-representation.[1] Lumbert further claimed that Finley was delaying his access to the appellate process, and was in effect denying him his right to appeal his criminal conviction. Lumbert sought the transcript and one million dollars in damages for "great mental anguish, grief, misery, worry and doubt, denial of rights, plus the obvious, keeping [him] in jail needlessly."[2]

Finley filed a motion to dismiss, "to be treated in part as a motion for summary judgment," and supporting memorandum, arguing that he was not the proper party to defend the suit; that he had fully discharged his statutory obligations to Lumbert; and that he was absolutely immune from any claim for damages; and that in light of Lumbert's pending state court mandamus action and Finley's form letters instructing him on the proper procedures to be employed in obtaining his transcript, principles of comity and federalism precluded the district court from entertaining the suit.

Finley's motion was granted in a minute order:

> Defendant's motion to dismiss is granted. Contrary to the allegations of the complaint, defendant is not the party legally responsible for providing plaintiff

with a copy of the transcript of his criminal trial. *Morris v. Finley*, 79 C 4221 (N.D.Ill. Mar. 18, 1980). Moreover, plaintiff's response to the motion indicates that he has received his copy of the proceedings ordered transcribed by the trial court. Plaintiff's Exhibit 38. Thus, in the absence of any allegations of prejudice, whatever claim plaintiff may have had against defendant is moot. Whether plaintiff is in need of additional portions of the trial record for purposes of appeal is a matter for the state court initially to decide. *Cf. United States ex rel. Burton v. Greer*, 643 F.2d 466, 470 (7th Cir.1981).

Accordingly, this action is hereby dismissed.

## II

Finley contends for the first time on appeal that Lumbert's section 1983 suit is the functional equivalent of a petition for a writ of habeas corpus which must be dismissed for failure to exhaust state court remedies. Finley does not specifically argue that the district court lacked subject matter jurisdiction of this section 1983 action; rather, Finley suggests that under the rule enunciated in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), section 1983 jurisdiction has been displaced by the "exclusive" habeas corpus remedy. Although in his complaint Lumbert seeks damages and his transcript, Finley focuses on the right Lumbert seeks to vindicate. Citing *Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963) and *Sutton v. Lash*, 576 F.2d 738 (7th Cir.1978), Finley argues that when "the right to utilize the existing state appellate process" has been unconstitutionally denied a criminal appellant, he is enti-

---

**1.** Lumbert also claimed the Supreme Court of Illinois had issued a writ of mandamus ordering Finley to provide him with a copy of the transcript, with which Finley had refused to comply. Counsel for Lumbert informed this court at oral argument that the Illinois Supreme Court had referred the action to the circuit court, an action that Lumbert construed as a grant of the writ. Apparently, no action was taken by the

circuit court because Lumbert by then had received the transcript.

**2.** In addition, Lumbert asked the court to remove Finley from office, forfeit his bond, disbar him for life, hold him in contempt of court for refusing to comply with the writ of mandamus, and put him in jail, relief obviously beyond the district court's power to award.

tled to seek the habeas corpus remedy of release, conditioned upon the state's provision of an appeal within a reasonable time.

■ This court ordinarily will not address issues that the parties have failed to present to the district court. *See, e.g., Mandarino v. Pollard,* 718 F.2d 845, 848 (7th Cir.1983); *Textile Banking Co. v. Rentschler,* 657 F.2d 844 (7th Cir.1981). An exception is recognized for a claim that the district court lacked subject matter jurisdiction of. the case. *See, e.g., Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1333 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Because in a broad sense the "displacement" rule of *Preiser* is jurisdictional, and because the determination whether Lumbert's action is properly characterized as a civil rights or an "exclusive" habeas corpus action is a condition precedent to the proper disposition of this appeal, we will address the issue.

■ The holding of *Preiser,* simply stated, is that a writ of habeas corpus is the "exclusive" federal remedy for a state prisoner who is challenging the fact or duration of his physical confinement and who is seeking a determination that he is entitled to immediate or speedier release. *Id.* 411 U.S. at 500, 93 S.Ct. at 1841. That a complaint falls within the literal terms of section 1983 is not controlling; section 1983 jurisdiction is displaced by the habeas corpus remedy in a situation where it "clearly applies." *Id.* at 489, 93 S.Ct. at 1836. The *Preiser* Court limited its holding to the case in which *only* the equitable relief of immediate or speedier release is sought.

> If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus

is *not* an appropriate or available federal remedy.

*Id.* at 494, 93 S.Ct. at 1838 (emphasis added).

■ *Preiser* establishes that although challenges to conditions of confinement may be brought as either section 1983 or habeas corpus actions, *id.* at 499, 93 S.Ct. at 1841, challenges to the fact or duration of confinement may be brought only as habeas corpus actions. Admittedly, the distinction between challenges to the "conditions of confinement" and to the "fact or duration of confinement" may, in some cases, be difficult to draw, but this is not such a case. The relief that Lumbert sought in his complaint, monetary damages and his transcript, does not lie at the "core of habeas corpus." *Id.* at 489, 93 S.Ct. at 1836. Lumbert has neither directly challenged the fact of his confinement nor sought a determination that he is entitled to immediate or speedier release.[3] To argue that the provision of the transcript might have resulted in a successful appeal of Lumbert's murder conviction, a new trial, and possible acquittal, and thereby would have indirectly affected the fact of his confinement, is to speculate in a Palsgrafian fashion that provides too tenuous a basis for the determination whether an action properly is characterized as an exclusive habeas corpus action.

Our conclusion that Lumbert properly may pursue this action under section 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, assuming, of course, he has stated a claim for relief, is inconsistent with neither *Lane v. Brown,* 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892, nor *Sutton v. Lash,* 576 F.2d 738. These cases are cited by Finley for the proposition that the writ of habeas corpus lies to vindicate the right to utilize an existing state appellate process. We have no quarrel with that general proposition.

---

3. Indeed, Lumbert's complaint may be characterized as a species of the conditions of confinement cases. He effectively alleges that because he is confined, he is being treated by the state in

an unconstitutional manner; specifically, access to his transcript has been delayed because he is confined.

In *Lane*, petitioner's right to appeal the denial of his petition for a writ of error *coram nobis* was frustrated by the operation of rules requiring that a transcript be filed to confer jurisdiction upon the court to entertain such an appeal and providing that only the public defender could procure a transcript of a *coram nobis* hearing for an indigent after he or she determined that the appeal had merit. The Court ordered petitioner's release unless he was provided an appeal on the merits within a reasonable time. In *Sutton*, two state prisoners were denied the right to appeal their convictions despite their clearly manifested desire to appeal and their timely requests for transcripts of their trial. Post-conviction relief also was rendered unavailable by the Indiana practice later declared unconstitutional in *Lane*. Matters essential to the trial record, including the stenographic notes, were ordered destroyed by the county board of commissioners. Absent a transcript, there was no possibility of appeal. This court therefore ordered that petitioners be released if not granted a new trial, the maximum relief they could have obtained had they properly perfected and successfully prosecuted their appeal. *Sutton v. Lash*, 576 F.2d at 746.

Conversely, Lumbert did not request, nor could he have requested, the habeas corpus relief awarded in *Lane* and *Sutton*. At the time his complaint was filed in July, 1980, his right to appeal was very much alive. The appeal was not dismissed for want of prosecution until April, 1981.

In conclusion, we hold Lumbert's section 1983 action is not barred by the "displacement" rule enunciated in *Preiser*.

4. In so concluding, the district court relied upon Judge Aspen's unpublished decision in *Morris v. Finley*, 79 C 4221 (N.D.Ill.Mar. 18, 1980). In *Morris*, Judge Aspen determined that under Illinois Supreme Court Rules 607 and 608, it is the duty of the Official Shorthand Reporter to transmit a copy of the trial transcript to the defendant.

5. The pertinent portion of Rule 607(b) provided, prior to amendment, that:

### III

Finley contends that the district court's disposition must be construed as a partial grant of summary judgment because that court, in ruling that Lumbert's claim for injunctive relief was mooted by his subsequent receipt of the transcript, relied upon on exhibit submitted by Lumbert, specifically a letter from Lumbert to Finley, in which he admitted that he had received the transcript. Finley's contention raises the issue whether the district court's reliance upon Lumbert's concession was a technical violation of Rule 56 of the Federal Rules of Civil Procedure. It is one we need not address, however, because the parties agree that Lumbert's claim for injunctive relief is moot; he has received his transcript.

We review the remainder of the district court's disposition under the standard appropriate for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We turn to the issue whether Lumbert has stated a claim upon which relief may be granted.

### IV

The district court determined that Finley was not the party legally responsible for "providing" Lumbert with the trial transcript.[4] Although the previous version of Illinois Supreme Court Rule 607(b) imposed this duty upon the court reporter,[5] the rule was amended, effective as of November 1, 1978, to provide as follows:

If the judge ... finds that the defendant is without financial means with which to obtain the report of proceedings at his trial or hearing, he shall order the court reporter to transcribe an original and

If the judge ... finds that the defendant is without means with which to obtain the report of proceedings at his trial or hearing, he shall order the court reporter to transcribe an original and copy of his notes. The original of the report shall be certified by the reporter and filed with the clerk of the trial court as provided below, *and the copy shall be certified by the reporter and delivered to the defendant without charge.*
Ill.Ann.Stat. ch. 110A, § 607(b) (Smith-Hurd 1976) (amended eff. Nov. 1, 1978).

copy of his notes. The original and one copy of the report shall be certified by the reporter and filed with the clerk of the trial court as provided below, without charge. The clerk of the trial court shall then, upon written request of the defendant, release the copy of the report of proceedings to the defendant's attorney of record on appeal. In the event no attorney appears of record, the clerk shall, upon written request of the defendant, release the report of proceedings to the defendant, his guardian or custodian. Ill.Rev.Stat. ch. 110A, § 607(b) (1981).

■ It is clear that several relevant changes were made in Rule 607(b): the term "release" has been substituted for the term "deliver"; this responsibility has been shifted from the court reporter to the clerk of the trial court; and provision has been made for "release" to the defendant's attorney of record on appeal. Finley submits that he has fulfilled his statutory obligation by releasing the copy of the trial transcript to Lumbert's custodian's representative, Prison Advocate Morris. He argues that substitution of the narrower term "release" in Rule 607(b) for the more active term "deliver" on its face belies any duty under the rule to mail the transcript to Lumbert. We agree that this is a reasonable interpretation of the amended rule.

■ Lumbert argues that even if Finley's interpretation of Rule 607(b) is correct, this procedure does not comport with due process. He further suggests that the procedure, which forces him to choose between using a prison advocate to pick up his transcript and never receiving the transcript, impermissibly hinders the effective exercise of his Sixth Amendment right of self-representation. We turn first to Lumbert's due process argument.

### A

In a long line of cases, the Supreme Court has affirmed and reaffirmed the principle that a state, having established a system of appellate review, may not operate that system in a manner that discriminates against the indigent. Various state-imposed financial barriers to the appellate process have been held to violate the Fourteenth Amendment principle of "equal justice." In the seminal case of *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court struck down a state practice of denying appellate review to those persons unable to afford a trial transcript. Fundamental fairness and the prohibition of invidious discrimination required no less. *Griffin* was extended in *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), in which the Court held that an indigent is entitled to counsel on his first appeal as of right. *Douglas*, however, was not a case in which the challenged state practice effectively denied appellate review to indigents. Although the Court relied heavily upon equal protection principles, an attendant due process rationale is articulated. *Douglas* stands for the principle that appellate review for indigents must be full and effective; counsel was deemed necessary to effectuate this goal.

Lumbert suggests the procedure set forth in Rule 607(b) violates due process in that it impermissibly hinders the right to effective appellate review for incarcerated *pro se* appellants. Citing *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir.1980), he further argues that Finley's implementation of this procedure led to a "substantial retardation of the appellate process," thereby denying him his right to effective appellate review. We disagree.

Clearly, Rule 607(b) does not erect any barrier to adjudication of a criminal defendant's appeal. Nor does it impede the right to full and effective appellate review; free transcripts to which indigent appellants are entitled are made available as required by *Griffin*. That an incarcerated *pro se* appellant must utilize the services of his custodian in obtaining the transcript does not impermissibly obstruct his right to speedy access to the appellate process. The rule, as interpreted and implemented by Finley, provides an effective means for appellants, such as Lumbert, to obtain their trial transcripts in a timely fashion. At the same

time, it effectuates the state's goal of securing a record of when and to whom the transcript is released. When an incarcerated *pro se* appellant chooses not to utilize this procedure, the resultant delay in obtaining the transcript cannot be ascribed either to the rule or to the clerk of court's discharge of his duties under it.[6] The delay in Lumbert's receipt of his transcript appears to be attributable to his insistence upon the right to receive the transcript by mail. He ultimately obtained his transcript by employing the procedure that was available to him all along.

We intimate no view about a case in which an incarcerated *pro se* appellant is refused all assistance by prison authorities in obtaining a transcript. Of course, in such circumstances any claim for deprivation of the right to an effective appeal must be brought against those who impeded the appellant's access to his transcript.

**B**

█ Lumbert cites only *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), for the proposition that the Sixth Amendment guarantees a right of self-representation on direct appeal of a criminal conviction. The case neither holds nor contains language intimating that such a right may be implied from the structure or history of the Sixth Amendment. In *Faretta,* the Court held only that the Sixth Amendment right to the assistance of counsel in all criminal trials implicitly embodies a correlative right of self-representation.[7]

The question, as phrased and answered negatively by the Court, was "whether a State may constitutionally hale a person into its criminal courts and there force a

lawyer upon him, even when he insists that he wants to conduct his own defense." *Id.* at 807, 95 S.Ct. at 2527. The Court noted the right to defend is given directly to the accused. The Sixth Amendment speaks of the "assistance" of counsel; its language and spirit contemplate that counsel shall be "an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Id.* at 820, 95 S.Ct. at 2533. But, as noted by the Court in *Ross v. Moffitt,* 417 U.S. 600, 610–11, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974), there are significant differences between the trial and appellate stages of a criminal proceeding.

> The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all.

This being so, it is difficult to perceive any basis in the history or structure of the Sixth Amendment for a right of self-representation on appeal.

The constitutional sources of an indigent defendant's right to counsel on his first appeal as of right are the Equal Protection Clause and, to a lesser extent, the Due Process Clause of the Fourteenth Amendment. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. Although due process and equal protection principles converge in the *Douglas* Court's analysis,

---

**6.** Lumbert's reliance upon *Rheuark* is misplaced. *Rheuark* involved excessive delays in the *preparation* of transcripts to which the indigent appellants were entitled. "Substantial retardation of the appellate process" was directly attributable to the unavailability of the necessary transcripts. Conversely, in the present case, Lumbert's transcript and a fair procedure for obtaining it were available to him.

**7.** The dissenters, Chief Justice Burger and Justices Blackmun and Rehnquist, argued that had

the right to conduct one's own defense been considered so critical as to require constitutional protection, it would not have been left to implication. They further suggested that inclusion of that right in section 35 of the Judiciary Act of 1789 (a right currently codified in 28 U.S.C. § 1654) and the contemporaneous omission of that right from the Sixth Amendment supports the conclusion that the omission was intentional.

the equal protection rationale for the *Douglas* decison is prominent; the Court determined that:

> [w]here the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor.

*Id.* at 357, 83 S.Ct. at 816. We find it conceptually difficult to imply in the "equal protection right" to counsel on direct appeal a correlative right of self-representation on direct appeal. And, although the due process principle of fundamental fairness requires that an indigent be provided with counsel on direct appeal, it provides no basis for finding a correlative right of self-representation on direct appeal.

Assuming *arguendo* a right of self-representation on direct appeal may be implied in either the Sixth or the Fourteenth Amendment, we do not believe the procedure set forth in Rule 607(b) unduly burdens the free exercise of that right. As we noted previously, the procedure merely requires an incarcerated *pro se* appellant to utilize the services of his custodian in obtaining a transcript. It in no way dictates the manner in which a *pro se* appellant pursues his claims on appeal. Lumbert clearly had a right of access to his trial transcript and the state had an obligation to provide such access. *But cf. United States ex rel. George v. Lane,* 718 F.2d 226 (7th Cir.1983) (defendant who chooses to represent himself at trial has no constitutional right of access to a law library). The state has fulfilled its duty in this case.

In sum, we hold that Lumbert has failed to state a section 1983 claim for deprivation of any right secured by the Constitution.[8] Although the parties have, at this court's request, briefed the issue whether Finley is entitled to absolute or qualified immunity from a claim for damages, in light of our conclusion that Lumbert has failed to state a claim upon which relief can be granted

under section 1983, we do not reach this issue.

Based upon the foregoing rationale, the district court's dismissal of this action is affirmed.

---

8. In his brief, Lumbert further challenged as violative of his due process rights Finley's failure to provide him with transcripts of unspecified pretrial proceedings. Counsel conceded at oral argument that production of such transcripts is not governed by Rule 607(b), and that the proper procedure is to petition the state court to order transcription of the proceedings. Lumbert did not do so.